IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 11-cv-02860-RBJ

CARLA ELLIS,

    Plaintiff,

v.

MIDLAND CREDIT MANGEMENT, INC., a Kansas corporation,

    Defendant.

ORDER

    This matter is before the Court on plaintiff's motion for attorneys' fees [docket #9]. Defendant Midland Credit Management filed a Response [#10], and plaintiff filed a reply [#11]. Neither party has requested a hearing.

**Facts and Procedural History**

    On November 3, 2011 Carla Ellis, through counsel David M. Larson, filed a complaint alleging violations of the Fair Debt Collection Practice Act, 15 U.S.C. §1692 et seq. ("FDCPA") by Midland Credit Management, Inc. [#1]. The summons and complaint were served on Midland's registered agent on November 7, 2011. [#3].

    On November 11, 2011 an attorney representing Midland contacted Mr. Larson by email and noted that in the past two weeks he had received seven FDCPA complaints filed by Mr. Larson in federal court in Colorado against Midland. On behalf of Midland he offered a blanket sum of $17,500 to settle the seven cases. Although this averages $2,500 per case, Midland's

attorney proposed that Mr. Larson would apportion the funds as he and his clients wished. [#10-1] at 5-6.  On the same day Mr. Larson rejected the blanket settlement and countered with a demand of $3,750 plus payment of the underlying debts and deletion of related information from credit reports for each of the seven clients or, alternatively, $4,000 each without debt payment or credit report deletion. *Id.* at 5.  Still on November 11, 2011 Midland rejected that demand but offered to settle the cases for $2,500 plus debt waiver and deletion of credit report information or $3,000 without waiver or deletion. *Id.* at 3-4.  I note that this all occurred within eight days of the filing of the complaint in the present case and before any responsive pleading was due or filed.

On November 17, 2011 Mr. Larson rejected the $2,500/$3,000 per case settlement offer and stated that his previous demand was his clients' bottom line. *Id.* at 2-3.  Midland's attorney immediately increased his offer to $2,750/$3,000. *Id.* at 2.  That was not accepted.  On November 29, 2011 Midland filed an Answer to the Complaint. [#4].  On December 7, 2011 Midland through counsel submitted a formal Offer of Judgment in favor of Ms. Ellis pursuant to Fed. R. Civ. P. 68.  [#5-1].  The offer was for $1,001 plus costs and reasonable attorney's fees as might be agreed between counsel or determined by the Court.  This was accepted by Ms. Ellis, acting through counsel. [#5].  Judgment was accordingly, with the addition of 0.11% post-judgment interest, on December 21, 2011 [#6].

Mr. Larson then filed a motion for an award of attorney's fees in the amount of $3,660 plus costs of $420 plus post-judgment interest in an amount to be determined by the Court. [#9]. He represented that his hourly rate is $300 and that he recorded 12.2 hours of time on this case. According to his itemized billing records, he spent 2.2 hours on October 27, 2011 meeting with the client, listening to a recording, and reviewing correspondence and two credit reports, and

"determining violations." *Id.* at 3.  On November 2, 2011 he recorded 2.3 hours listening to the recording again, transcribing portions of it, reviewing credit reports, drafting a summons and complaint, and calling his client.  He recorded 0.7 hours between November 3 and November 8, 2011 sending the summons and complaint to the court for filing and to a process server for service and reviewing and advising his client of this Court's routine order to set a scheduling conference.  Then he recorded 0.6 hours on November 11, 2011 in the exchange of settlement offers.  By that time 5.8 hours had been recorded.  Another 0.6 hours were recorded, apparently concerning settlement negotiations, through November 22, 2011, bringing the total by then to 6.4 hours.  *Id.* at 3-4.

Mr. Larsen then recorded 1.0 hours to review Midland's Answer; 0.4 hours communicating with his client before the Offer of Judgment was received; 1.4 hours reviewing, communicating with his client, and considering the Offer of Judgment; 0.5 hours preparing, communicating about, and filing a Notice of Acceptance; 0.6 hours reviewing the Court's judgment, preparing, filing and reviewing the Court's order on costs; and what appears to be a total of 2.0 hours relating to his fee application.  That actually brought the total to 12.3 hours by my count.

In the motion for an award of attorney's fees Mr. Larson stated that (1) defense counsel indicated in another case that courts had found $300 an hour to be reasonable for experienced attorneys in FDCPA cases; (2) a rate of $250 an hour had been approved for by courts in this district in several 2008 cases; and (3) $300 an hour had been approved for him in a bankruptcy case in this district.  He submitted an affidavit from Richard B. Wynkoop, a consumer law attorney, who stated that $300 an hour is reasonable in this community for Mr. Larson, an experienced and leading practitioner in the FDCPA field, and that he believes that the time

recorded to the case was reasonable. [#9-1]. Mr. Larson also noted his experience, including his having handled more than 1,300 FDCPA cases on behalf of plaintiffs in the United States District Court for the District of Colorado, and his having attended and lectured at numerous conferences on the FDCPA. [#9] at ¶22.

In a 20-page response supported by several exhibits [#10] Midland argues that a fee award of no more than $1,000 is justified in this case. Midland argues that (1) Mr. Larson had only billed 5.8 hours through November 11, 2011 when Midland was offering Ms. Ellis $3,000 to settle this case; (2) even that figure included excessive billing for "canned pleadings" and time that amounted to "clerical work;" (3) in the case in which Mr. Larson had quoted Midland's counsel regarding a $300 an hour rate, Judge Walker Miller determined that an acceptable rate for attorneys in this field in this community was $225 to $250 an hour; (4) attorney Wynkoop is not qualified to opine on what is reasonable for the work in this case, and in any event, he is a close associate of Mr. Larson and cannot be viewed as unbiased; (5) two attorneys from whom Midland has obtained affidavits, Irv Borenstein and Alan Greenberg, are experienced FDCPA attorneys and believe that $225 to $250 an hour is reasonable; and (6) Mr. Larson has not disclosed his fee agreement with his client. In further support of the argument that the hours recorded to this case were excessive, Midland states that the Complaint mirrors the complaints Mr. Larson filed in 10 other recent cases against Midland, and that the same amounts of time for meetings, phone calls and letters were filed in each of those cases.

Plaintiff replies [#11] that Ms. Ellis rejected the earlier settlement offers but then accepted the smaller Offer of Judgment after being advised that she would have to pay defendant's costs if she received a smaller judgment after trial. He essentially repeats his previous arguments regarding the $300 hourly rate. He argues that the attorneys who submitted

affidavits for Midland are not qualified to express the opinions they expressed, because they mostly defend debt collectors in state collection proceedings. He disputes the suggestion that Mr. Wynkoop is biased. He defends the number of hours recorded as necessary and reasonable and disputes the notion that any of the time was for clerical grade work. He cites cases holding that fee awards exceeding a plaintiff's recovery have been made in civil rights and consumer protection cases. He declines to provide his fee agreement with his client, insisting that this is irrelevant to the calculation of a reasonable fee and that a similar request was rejected by Judge Arguello in another case in this district. Finally, he requests additional fees of $630 (2.1 hours times $300 per hour) for his time reviewing and replying to Midland's response to his fee motion, bring the total now requested to $4,920.00.

**Conclusions**

Pursuant to 15 U.S.C. §1692k(a)(3), in a successful action by a plaintiff in an FDCPA case, the defendant debt collector is liable for "the costs of the action, together with a reasonable attorneys' fee as determined by the court." A common point of beginning in determining a reasonable fee award is calculation of the so-called "lodestar," namely the number of hours reasonably expended multiplied by a reasonable hourly rate. *Anchondo v. Anderson, Crenshaw & Assoc., LLC*, 616 F.3d 1098, 1102 (10th Cir. 2010). The important point is that the lodestar is a product of the *reasonable* time by the *reasonable* rate, which may or may not coincide with the actual time recorded and rate charged. The lodestar produces a presumptively reasonable fee. *Id.*

In the frequently cited case of *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir. 1974), the court identified 12 factors that are relevant to the determination of a reasonable attorney's fee:

>   (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* at 717-19.

The lodestar approach and the *Johnson* approach are different but to some extent overlapping methods of determining a reasonable fee. The lodestar determination is now considered to be primary. *Anchondo,* 616 F.3d at 1103-04.

In addition, Rule 1.5 of the Colorado Rules of Professional Conduct is a useful guide regarding the determination of a reasonable fee. Much like the *Johnson* factors, this Rule requires consideration of (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly; (2) whether this engagement precluded other work; (3) the fee customarily charged in the community; (4) the amount involved and the result obtained; (5) the time limitations imposed by the client or the circumstances; (6) the nature and length of the professional relationship; (7) the experience, reputation and ability of the lawyer; and (8) whether the fee is fixed or contingent.

I conclude that, by any of these measures, the fee requested in this case is unreasonable. Beginning with the hourly rate, I am not persuaded by the affidavits of any of the supporting lawyers on either side. These are lawyers on opposite sides of these voluminous cases,

predictably supporting their side of these disputes.  I also note that a potential source of what truly is a reasonable fee – what an actual client is willing to pay for the service – is unavailable here.  There is no evidence that Ms. Ellis agreed to pay, or is able to pay, or was ever expected to pay, any fee, or that she cared at all about what hourly rate Mr. Larson chose to "charge" her.  In the absence of any other credible evidence, I accept the judgment of my several colleagues who have been down this road before me.  I accept that $250 an hour can be considered to be a reasonable rate for this type of work in this community.

I next look at the number of hours recorded.  The preparation of a complaint in this case was a relatively simple process.  This is not complex litigation.  Mr. Larson has filed an astonishing number of these cases in this district alone.  Midland states, and Mr. Larson does not dispute, that the complaints in the 10 cases recently filed against Midland mirrored one another.  It is impossible to tell what part of the 4.2 hours recorded on October 27 and November 2, 2011 was for the actual meeting with the client and review of the facts and what part was for preparing the summons and complaint.  I nevertheless will give Mr. Larson the benefit of any doubt and assume that this time was reasonably necessary.

The time between the preparation of the complaint and the receipt of Midland's first settlement offer appears to me to be mostly clerical in nature.  Even so, with the expenditure of 6.4 hours Mr. Larson had obtained a settlement offer of $2,750 or $3,000 for his client, depending upon whether the underlying debts would be waived and the credit reports adjusted.  In retrospect, at least, rejection of that offer was unwise.  Larson states that Ms. Ellis rejected that offer.  He presents no affidavit from her confirming this.  He also attributes to Ms. Ellis the decision to accept the less favorable Offer of Judgment a short time later.  Again, there is no confirmation of this from Ms. Ellis, and one can at least wonder to what extent she was making

decisions or simply relying on counsel. In any event, Mr. Larson spent 3.4 hours getting to the point where the Offer of Judgment was approved and accepted by the Court. The remainder of the 12.2 hours (actually 12.3 hours) recorded concerned taxation of costs (which were stipulated) and the motion for attorney's fees.

Please understand that I am not disputing that Mr. Larson recorded the time he says he recorded. Nor am I suggesting that this case and cases like it are unworthy of prosecution. If the debt collection industry persists in engaging in unfair and unlawful collection practices (a matter not determined on the merits in this case because of the resolution by Offer of Judgment), these cases will continue to be filed and settled. Mr. Larson, as apparently one of the leading specialists in this type of litigation, deserves to be reasonably compensated. However, the fact is that this is high volume, small dollar, non-complex litigation. The efficiencies of scale that Mr. Larson has achieved, to his credit, sometimes enable him (or paralegal assistants and clerical staff should he so choose) to "investigate" the facts, prepare pleadings, and negotiate settlements with small investments of time. Such was the case here.

Applying the *Johnson* factors, the Court finds that (1) the attorney time reasonably required to achieve a reasonable result in this particular case was approximately 8.4 hours, consisting of the 6.4 hours recorded from the first client meeting through the rejection of Midland's last and best settlement offer (which would have resolved the case and avoided further litigation concerning costs and attorney's fees) plus two hours arbitrarily but I think generously allows for wrapping up the settlement and obtaining a stipulated dismissal of the case had the offer been accepted; this is not to say that he or his client could not gamble on perhaps getting a better offer, but only to say that this was a reasonable amount of time to achieve a very favorable, indeed more favorable, result for his client; (2) the case presented no novel or difficult

questions of fact or law; (3) the case required relatively modest attorney skill; (4) no other work was precluded by this engagement; (5) the customary rate for this type of work in this community is approximately $250 per hour; (6) the fee was contingent in the sense that it would be paid out of the settlement or by court order, but there is little indication in the record beyond the filing of an answer that the merits of the claim were seriously disputed; (7) the client imposed no time limitations to the Court's knowledge; (8) regarding the result obtained, according to the Complaint the amount of the underlying debts was approximately $4,400; Midland offered to settle for $2,750 and to include the waiver of the debts and deletion of credit reports, or $3,000 without the waiver and deletion; the result obtained for the client was a settlement of $1001 (exclusive of costs and attorney's fees) with no waiver of the debts or deletion of the credit reports; (9) the experience, reputation, and ability of Mr. Larson is reflected in the approved hourly rate; (10) there was nothing particularly undesirable about this case; Mr. Larson has made a specialty of prosecuting high volumes of similar cases; (11) there is no indication that Mr. Larson had a prior professional relationship with Ms. Ellis; and (12) with respect to actual attorney's fee awards to Mr. Larson in the other cases cited by him, I have looked them up in the CM/ECF system and take judicial notice of the following:

- 08CV680: Mr. Larson requested $33,275 in a case that went to trial; Judge Miller reduced the amount by 80% and noted that plaintiff had prevailed on approximately one-fourth of the claims and had unnecessarily multiplied claims.
- 08CV27: Mr. Larson requested $3,313 in attorney's fees; the defendant requested a reduction to $1,290; Judge Kane awarded $3,054 without comment.

- 08CV422: Mr. Larson requested $3,337.50; defendant requested a reduction to $1,120; Magistrate Judge Watanabe recommended an award of $2,125, which Judge Blackburn accepted.
- 08CV772: Mr. Larson requested $3,150; defendant requested a reduction to $2,100; Judge Weinshienk awarded $3,050.
- 08CV421: Mr. Larson requested $3,462; defendant requested a reduction to $550; Magistrate Judge Watanabe recommended $2,712, which Judge Blackburn accepted.
- 08CV1500: Mr. Larson requested $9,225; defendant requested a reduction to "a reasonable amount;" Judge Blackburn awarded $9,225.

I cannot say that all these cases were strictly "similar" to the present cases. Without scrutinizing each file pleading by pleading, it is obvious that some of them were more involved, and the nature and vigor of the opposition to the fee application varied. I simply note these figures because the cases were listed by the plaintiff, and they provide some context. I also note that Mr. Larson's fee motions, and the defendants' responses, often were quite similar in form and content.

In summary, the Court finds and concludes that a reasonable if not generous lodestar determination would be $2,100 (8.4 hours times $250 per hour). This credits the first 6.4 hours fully, even though the time billed included some attorney time for what appears to be clerical work. In my judgment, some of the other *Johnson* factors arguably support a lower award. On the other hand, it could well be argued that in calculating the lodestar, the Court has put too much weight on the rejection of the more favorable settlement offer. Settlement negotiation is an art more than a science, and the fact that one gambles and loses does not change the fact that additional time was spent thereafter on the case. On balance, having considered all the factors, I

find and conclude that the reasonable lodestar amount as calculated above provides a reasonable attorney's fee award in this case.

**Order**

Accordingly, the Motion for Attorneys' Fees [#9] is GRANTED in part.  The Court awards attorneys' fees to Mr. Larson in the amount of $2,100.00.  The Court's judgment entered on December 21, 2011 was in favor of plaintiff against defendant in the amount of $1,001.00 plus post-judgment interest at 0.11% per annum from the date of entry of judgment until the judgment is satisfied.  Costs were awarded in the amount of $420.00.  Post-judgment interest at the same 0.11% rate will run on the costs and the attorney's fees from the respective dates of those awards until satisfaction of those amounts.  Collectively, this constitutes this Court's final written order of judgment.

DATED this 24th day of September, 2012.

BY THE COURT:

_(signature)_

_____
R. Brooke Jackson
United States District Judge